**Paul Jeffrey TOWER, Appellant,**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Argued Sept. 20, 1994.

Decided Jan. 4, 1995.

Catherine A. McGovern, for appellant.

Timothy P. Wile, Assistant Counsel–In–Charge Appellate section, for appellee.

Before SMITH and PELLEGRINI, JJ., and DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

Paul Jeffrey Tower (Licensee) appeals from an order of the Court of Common Pleas of Luzerne County which dismissed his appeal from two suspensions of his operating privilege imposed by the Department of Transportation, Bureau of Drivers Licensing (Department).

On April 11, 1990, Licensee's operating privilege was restored following a one-year suspension for violating Section 1543 of the Vehicle Code, 75 Pa.C.S. § 1543 (driving while operating privilege is suspended or revoked). By notice dated July 30, 1992, Licensee was informed by the Department that as a result of his conviction on December 29, 1983, for violating Section 3743 of the Vehicle Code,[1] he had been placed in habitual offender status and that his operating privilege would be suspended for a five year period pursuant to Section 1542(d) of the Vehicle Code, 75 Pa.C.S. § 1542(d).[2] In a second notice dated July 30, 1992, Licensee was informed that his operating privilege would be suspended for an additional period of two years in accordance with Section 1542(e) of

1. 75 Pa.C.S. § 3743, leaving the scene of an accident.

2. Section 1542 of the Vehicle Code, 75 Pa.C.S. § 1542, entitled "Revocation of habitual offender's license" provides:

(a) **General rule.**—The department shall revoke the operating privilege of any person found to be a habitual offender pursuant to the provisions of this section. A 'habitual offender' shall be any person whose driving record, as maintained in the department, shows that such person has accumulated the requisite number of convictions for the separate and distinct offenses described and enumerated in subsection (b) committed after the effective date of this title and within any period of five years thereafter.

(b) **Offenses enumerated.**—three convictions arising from separate acts of any one or more of the following offenses committed either singularly or in combination by any person shall result in such person being designated as a habitual offender:

(1) Any offense set forth in section 1532 relating to revocation or suspension of operating privilege).

. . . .

. . . .

(d) **Period of revocation.**—The operating privilege of any person found to be a habitual offender under the provisions of this section shall be revoked by the department for a period of five years.

the Vehicle Code,[3] as a result of his conviction on December 29, 1983 for violating Section 1543 of the Vehicle Code.

Licensee filed a single statutory appeal from these suspensions[4] and a hearing before the trial court was held on May 13, 1993. At that hearing, the attorney for the Department attempted to offer into evidence a certification of Licensee's driving record. Licensee objected on the basis that the certificate was incomplete and that there were other violations in Licensee's possession which were not listed in the certification. The trial court continued the matter but allowed testimony to be taken from Licensee's employer.

David Rowlands, vice president of Rowlands Sales Company, testified that he hired Licensee as a welder on May 31, 1989, at that time he knew that Licensee's operating privilege was suspended, and, he worked with Licensee in having his operating privilege restored. Prior to the restoration of his operating privilege, Licensee underwent a required training period where he worked in the shop and would occasionally go out in the field. During this time period, Rowlands would make sure that somebody who could drive was with Licensee.

Rowlands further testified that in April, 1990, at the same time his license was restored, Licensee had been progressing in the company, began to take on leadership ability and skills and would go out on jobs either by himself or with other people. Rowlands testified that the position Licensee now holds requires that he be able to drive on a moment's notice. He further testified that Licensee got that position as a result of the Department restoring his operating privilege. Rowlands further testified that it would be "very, very difficult" for Licensee to retain his employment with the company if his license was suspended. (Notes of Testimony (N.T.) at 10).

On June 2, 1993, a second hearing was held. The attorney for the Department stated he would be willing to stipulate that Licensee had applied for only one license, that the reason Licensee had a second number was that he was assigned another one by the Department because, on a traffic citation, a police officer listed Licensee's name with an "s" at the end and with a Rhode Island address. The Department's attorney further stipulated that Licensee did nothing fraudulent nor did he give improper information on the documents he furnished to the Department. The Department then offered into evidence a certification of Licensee's driving record, to which Licensee did not object.

Licensee testified on his own behalf at this hearing. He testified that he was a service technician and his job required him to go out into the field to various plants. He further testified that he could be called to a job site on a moment's notice. Licensee also testified that twice a month he goes out by himself to job sites. Licensee stated that he usually worked with at least two other people but if no one else is available, he has to go alone. Licensee stated that when he began working for Rowlands, he lived in a motel in the same town where his job was located and that a fellow employee picked him up and took him to work. Licensee testified that he now lives approximately 30 miles from his job site. Licensee also testified that his grandfather recently had a stroke and, in the event of a problem at the grandfather's house, Licensee may have to go there to assist his grandmother.

The trial court found that the twenty-seven month delay between the restoration of Licensee's operating privilege in April, 1990 and the imposition of the suspensions in July, 1992 was chargeable to the Department.[5]

---

3. 75 Pa.C.S. § 1542(e). Section 1542(e) provides that "[a]ny additional offense committed within a period of five years shall result in a revocation for an additional period of two years."

4. A single statutory appeal from the suspension of operating privileges is proper where all the criminal convictions were obtained at a single proceeding and the licensee's sole and individual operator's privileges were being suspended. *Department of Transportation, Bureau of Driver Licensing v. Hardy,* 160 Pa.Commonwealth Ct. 427, 635 A.2d 230 (1993).

5. As noted by the trial court, Licensee's record reveals ten license suspensions, not including the two suspensions which are the subject of this appeal, and two revocations. Licensee has spent

However, the trial court found that Licensee had not shown that he changed his circumstances in reliance on the Department's delay. Licensee now appeals to this Court.

 A trial court may reverse a suspension where the licensee shows that an unreasonable delay chargeable to the Department caused him to believe that his privileges would not be impaired and based on that belief to have changed his circumstances to his detriment. *Department of Transportation, Bureau of Driver Licensing v. Duncan*, 144 Pa.Commonwealth Ct. 261, 601 A.2d 456 (1991). The Department is chargeable with delay occurring after it receives the certification of conviction. *Chappell v. Commonwealth*, 59 Pa.Commonwealth Ct. 504, 430 A.2d 377 (1981). It is the Department's burden to prove that delay was caused, not by administrative inaction, but by some other factor not chargeable to it. *Department of Transportation, Bureau of Driver Licensing v. Turner*, 155 Pa.Commonwealth Ct. 106, 624 A.2d 759 (1993).

At the hearings before the trial court, the Department offered no evidence to establish that the delay was caused by a factor other than administrative inaction. In his closing argument, counsel for the Department stated:

> The documents that the Department submitted do indeed state that [Licensee] was convicted of the charges which led to a five-year suspension and a two-year suspension because the police officer put an "S" on his name and listed his address as Rhode Island. The Department had no way of knowing it was the same person until they finally somehow checked it and discovered it was the same person, and that's what led to the delay.

(N.T., p. 28). The trial court found that the Department conceded it was responsible for

the delay, and that finding is supported by the above statement.

 In the alternative, the Department argues that even if the twenty-seven month delay is chargeable to it, the delay was reasonable. What will constitute a reasonable time depends on the circumstances of each case. *Lemley v. Department of Transportation*, 97 Pa.Commonwealth Ct. 469, 509 A.2d 1380 (1986), *petition for allowance of appeal denied*, 514 Pa. 620, 521 A.2d 934 (1987). In *Turner*, a delay of nineteen months, attributable to the Department, was held to be unreasonable as a matter of law. In the case *sub judice*, we believe a delay of twenty-seven months, attributable to the Department, is also unreasonable.[6]

 Although the trial court found that the delay was chargeable to the Department, it dismissed Licensee's appeal because it determined that Licensee did not establish that he changed his position in reliance on the Department's inaction. The testimony before the trial court shows that Licensee was hired while his operating privileges were suspended, that he underwent a training period that roughly coincided with the remainder of his suspension and that he got the position he now holds as a result of his license being restored. This position requires that he be able to drive on a moment's notice to go to a job site. Although the employer did not explicitly state that Licensee would lose this position if his operating privileges were again suspended, he did state that a suspension would be "very hard, very devastating to the company" (N.T., p. 11) and that it would be highly improbable that Licensee could still retain that position. (N.T., p. 14).

We believe that this testimony is sufficient to demonstrate prejudice to Licensee. *See Bennett v. Department of Transportation, Bureau of Driver Licensing*, 163 Pa.Commonwealth Ct. 664, 642 A.2d 1139 (1994)

---

most of his driving life under suspension. (Trial Court Opinion, p. 1).

6. Although the trial court determined that the length of the delay was twenty-seven months, the actual delay could be much greater. As we have stated, the Department is chargeable with delay from the point when it receives certification of conviction. Licensee was convicted on Decem-

ber 29, 1983, for the offenses which triggered his classification as a habitual offender and the add-on suspension. Thus, the period of delay would be measured from the point that the Department received certification of those convictions and not from the point where Licensee's operating privilege was restored from prior suspensions.

(probability that the licensee would be unable to retain his employment, coupled with a presumption that unemployment compensation benefits would not be available to him, demonstrated sufficient prejudice); *Rea v. Department of Transportation v. Bureau of Driver Licensing,* 132 Pa.Commonwealth Ct. 145, 572 A.2d 236 (1990), (sufficient prejudice demonstrated where the licensee renewed his license during the ten year period of delay and where he testified to the integral relationship between his employment at an automobile dealership and his being licensed to drive); *Department of Transportation v. Hosek,* 3 Pa.Commonwealth Ct. 580, 284 A.2d 524 (1971) (licensee, who in reliance on the Department's inactivity, left employment as a mover's helper to take a job as a truck driver demonstrated sufficient prejudice). Accordingly, we conclude that the trial court erred in dismissing Licensee's appeal from the suspensions of his operating privileges on the basis that he had not shown sufficient prejudice caused by the Department's delay.[7]

The order of the trial court is reversed.

### ORDER

AND NOW, this 4th day of January, 1995, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is reversed.

---

**7.** Licensee makes two arguments regarding the imposition of the add-on suspension which we feel compelled to comment upon. First, he argues that the add-on suspension cannot be imposed prior to Licensee being classified as a habitual offender. This argument was specifically rejected in *Rock Appeal,* Pa.Commonwealth Ct., 518 A.2d 1303 (1986). Second, Licensee cites *Frontini v. Department of Transportation,* 527 Pa. 448, 593 A.2d 410 (1991), for the proposition that multiple offenses, arising from a single act, cannot be counted as separate offenses for the purposes of imposing penalties under the habitual offender statute. Licensee argues that the offense for which the add-on suspension was imposed arose from the same incident as the offense which constituted the third conviction resulting in his classification as a habitual offender. In *Department of Transportation, Bureau of Driver Licensing v. Korenich,* —— Pa.Commonwealth Ct. ——, 650 A.2d 1141 (1994), this Court stated that the test to apply to determine whether two convictions merge into a single act is the test articulated in *Department of Transportation, Bureau of Driver Licensing v. Maddesi,* 138 Pa.Commonwealth Ct. 467, 588 A.2d 580 (1991). In *Maddesi,* the Court held that offenses do not merge where each violation requires proof of a fact which the other does not. In the case before us, the convictions in question are for driving while operating privilege is suspended or revoked and for leaving the scene of an accident, offenses which different proof is required. Therefore, under *Korenich* and *Maddesi,* the two offenses, arising from a single incident, do not merge into one offense and an add-on suspension could properly be imposed.